[Civ. No. 42070. First Dist., Div. Four. May 4, 1979.]

SHELLEY MANDEL, Plaintiff and Respondent, v.
JEROME A. LACKNER, as Director, etc., et al.,
Defendants and Appellants.

748

## Counsel

Evelle J. Younger, George Deukmejian, Attorneys General, John J. Klee, Jr., Assistant Attorney General, Charlton G. Holland III, Asher Rubin and Edward P. Hill, Deputy Attorneys General, for Defendants and Appellants.

Richard M. Kaplan, Ephraim Margolin and Nicholas Arguimbau for Plaintiff and Respondent.

Antonio Rossmann, John E. McDermott, Robert T. Olmos, Patricia M. Tenoso and Richard A. Rothschild as Amici Curiae on behalf of Plaintiff and Respondent.

## Opinion

**RATTIGAN, Acting P. J.**—This is the second appeal taken by the captioned state officers in this action. The first one was from a judgment in favor of respondent which we affirmed on its merits. (*Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596 [127 Cal.Rptr. 244, 90 A.L.R.3d

728].)[1] Among other things, that judgment (1) enjoined the Governor from continuing the practice of ordering the closure of state offices on the religious holyday of Good Friday, between noon and 3 p.m., upon the ground that the practice violated constitutional proscriptions involving the treatment of religion by government (U.S. Const., 1st Amend., cl. 1; *id.,* 14th Amend.; Cal. Const., art. I, § 4); (2) enjoined the Controller, on the same ground, from paying state employees for time taken off from work during the three-hour period mentioned; and (3) awarded respondent $25,000 as compensation for the services rendered by her attorneys prior to the entry of the judgment. (*Mandel I, supra,* at pp. 610-624.)

Acting upon respondent's application to this court for an award of attorneys' fees on that appeal, we deferred to the trial court and vested it with jurisdiction to hear and act upon her application in subsequent proceedings. (*Mandel I, supra,* 54 Cal.App.3d at p. 624.) When the remittitur had been filed, she made the application by an appropriate motion in that court. In proceedings to be described, the court granted her motion and entered a judgment awarding her $75,000, payable by the state, as attorneys' fees on the first appeal.

The present appeal is from the $75,000 judgment. We decided it once, but granted petitions for rehearing filed by both sides. Matters considered on rehearing will be discussed in sequence.

The questions presented require that the proceedings conducted on respondent's postremand motion be described in some detail. Her attorneys in the action, whose compensation on the first appeal is at issue here, are Richard M. Kaplan and Ephraim Margolin. Sworn declarations by both, with exhibits, were filed in support of the motion. Both gave oral depositions in discovery proceedings which followed, and both testified at a hearing on the motion. In addition, each side responded in writing to interrogatories propounded by the other. All of these sources were received in evidence on the motion.[2]

---

[1]Shelley Mandel, the plaintiff who brought the action against various state officers, was the respondent on the first appeal. She is the respondent on this one as well. The name changes in its title were made by the trial court because some of the initial defendants and appellants have been superseded by individuals who currently hold the respective state offices involved. The Attorney General has represented the defendants since the inception of the action on both appeals. We refer to the first appeal as "*Mandel I.*"

[2]It may be mentioned at this point that both attorneys filed and testified to documentary records, chronologically kept by each, of the time expended on the former appeal. The total amount of time recorded by both, between them, was approximately 267 hours. The figure includes time spent on such essential tasks as brief-writing, and such

The trial court made a minute order stating its intention to award $75,000 on the motion. Appellants requested formal findings of fact and conclusions of law pursuant to Code of Civil Procedure section 632 and rule 232(b), California Rules of Court. Respondent submitted proposed findings and conclusions, and a proposed judgment, to which appellants filed written objections. Findings were settled at a hearing, after which the court signed and filed new findings and conclusions prepared by respondent. The $75,000 judgment for attorneys' fees was entered accordingly.

*The Findings*

As pertinent here, the trial court first made a finding (No. 7) that "it is proper for it to award attorney's fees" on the former appeal. This finding was substantially reiterated in conclusion of law No. 7,[3] where the court stated that "Plaintiff's attorneys, Richard M. Kaplan and Ephraim Margolin, are entitled to be compensated by Defendants for said attorneys' efforts in resisting the appeal." These passages (of which the second is cited in the judgment) amount to a finding that respondent is entitled to *an* award, a determination which had been left entirely open by this court. (*Mandel I, supra,* 54 Cal.App.3d 596 at p. 624.)

The amount of the award is covered at great length in successive findings which are to be summarized as briefly as possible. In No. 8, the court found that "[t]he nature of the litigation in the [former] appeal was complex, novel and virtually unique" in establishing (1) the constitutional violations involved in the closure of state offices on a religious holyday and (2) that attorneys' fees may be awarded "in an action against the State of California or its officers and agencies, in which a class or group of citizens or the State receives a substantial benefit . . . ." Finding No. 10 stated in pertinent part that "[t]he difficulty of the appeal was very substantial on substantive grounds" as to each of the issues enumerated above and others, among which "the interplay of the various sections of the Government Code . . . and the effect upon them of the constitutional

---

secondary activities as routine correspondence and telephone calls, by both attorneys. As to one of them, it includes such apparently extraneous pursuits as a "lecture" to the American Jewish Congress and a "talk" given to a B'nai B'rith lodge. None of the evidence provided any basis for evaluating either attorney's services on a per-hour basis.

[3]The court frequently stated findings of fact as conclusions of law, and vice versa. The formal designation given either is of no significance, provided we distinguish one from the other. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 323, pp. 3126-3128.)

requirements . . . required resourcefulness by Plaintiff's attorneys to meet and to overcome."[4]

Finding No. 11 referred to the monetary "amount involved" in *Mandel I* as "very substantial, amounting to a wrongful expenditure of State funds of at least $2,000,000.00 annually, which amount is now saved annually" as the result of respondent's "success" on that appeal and the efforts of her attorneys. (See *Mandel I, supra,* 54 Cal.App.3d 596 at p. 622, fn. 16.)

The court further found that the attorneys had demonstrated a high degree of skill and "unusual legal talent, experience, ingenuity and innovation in the conduct of the appeal" (finding No. 12); that the success of their efforts had been "total," and that they had "achieved for Plaintiff and her class a legal and constitutional victory and vindication of very high magnitude" (No. 14); and that their work had attained for them "the highest possible stature in their legal community" and "the approval of their colleagues in the Bar." (No. 15.)

Concerning the *time spent* by the attorneys on the appeal, the court found in effect that much of it was attributed to tactical obduracy by the Attorney General which amounted to outright bad faith.[5] The only finding expressly made on the subject of *time spent* as such (No. 13) includes this language: "The attention given to the case by Plaintiff's

---

[4]The "interplay" reference is to the part of *Mandel I* which cites and discusses the "various sections of the Government Code" involved in the executive designation of the Good Friday "holiday" pursuant to several of them. (*Mandel I, supra,* 54 Cal.App.3d 596 at pp. 605-608.)

[5]This determination appears in finding No. 9, which we quote in pertinent part as follows: "The appeal was uncommonly difficult and complex; the difficulty and complexity were . . . compounded by the manner in which the defense elected to proceed . . . in certain past aspects of the appeal, including, but not limited to, the following: . . . With no basis in fact, theology, history, law or common knowledge, advising the . . . [appellate courts involved] . . . that the closing of State offices on Good Friday was not because it was a solemn Christian holiday [*sic*], but, instead, to provide State employees with an annual three-hour . . . 'time of rest and relaxation' . . . and similar specious, unsupported statements. The Attorney General had no factual basis for asserting that a secular purpose existed for said holiday and knew that the truth would lead necessarily to a Judgment that the holiday violated the Federal and State Constitutions. . . . Although the Establishment Clause of the First Amendment and Article I, Section 4, of the California Constitution . . . prohibited the declaration of Good Friday as a State holiday, Defendants and the Attorney General argued that there was no violation. Instead, throughout the appeal, such officers vigorously, persistently, and strenuously opposed the impact and effect of the law . . . by making . . . [such] . . . specious factual assertions in their briefs . . . . By reason of the failure to follow the law, as stated . . . , Defendants' attorneys [*sic*] unnecessarily prolonged the proceedings and made the appeal more difficult . . . ."

attorneys was considerable. Not only did they expend a very *substantial amount of time* in defending the Judgment on appeal, but they were exceptionally well prepared and diligent at all stages. . . . In addition to *the hours spent* on the appeal *as shown in the record,* additional hours have been spent, and are being spent, in this matter. The *amount of time spent* by Plaintiff's attorneys was *substantial.* . . . While *the hours spent* are only one criterion, and not the sole criterion, for determining the amount of fees on appeal, they may be used in conjunction with other elements in determining the propriety of the amount awarded, and the Court has done so. . . ." (Italics added.)

In a perorative finding stated as a conclusion of law (see fn. 3, *ante*), the court pronounced that the "reasonable value" of the attorneys' services was $75,000. This finding summed up several of the factors found as recited above, but it did not refer to the time actually spent by either attorney on the appeal. The court made no finding as to the value of the services rendered by either attorney severally, nor did it evaluate their joint or several services on a per-hour or other unit-of-time basis. The judgment consequently awards her a flat "$75,000.00 as and for attorneys' fees" on the first appeal.

### Review

The trial court's determination that respondent is entitled to *an* award of attorneys' fees on the first appeal is not disputed by the present appellants. We therefore affirm the judgment to the extent that it awards attorneys' fees as such. For the reasons next appearing, we reverse it as to the amount awarded.

The controlling law is to be examined first. The three equitable theories upon which a successful litigant's attorney may be compensated, from the fruits of the litigation or by the other side in a particular case warranting departure from the general rule to the contrary, are the "common fund doctrine," the "substantial benefit rule," and the "private attorney general concept." (*Serrano* v. *Priest* (1977) 20 Cal.3d 25 [*Serrano III*], 31-32, 34-48 [141 Cal.Rptr. 315, 569 P.2d 1303].) In *Mandel I,* we cited all three theories in reviewing the $25,000 award made to respondent as compensation for the services rendered by Messrs. Kaplan and Margolin before that appeal had been taken. (*Mandel I, supra,* 54 Cal.App.3d 596 at pp. 619-622.) We declined to apply the "private attorney general concept" for lack of California precedent at the time, but we pointed out that a court of this state might validly award attorneys'

fees under either of the other two theories. (*Id.,* at pp. 620-621.) We thereupon affirmed the $25,000 award on the basis of the "substantial benefit rule." (*Id.,* at pp. 621-623; *Serrano III, supra,* at p. 39.)

*Serrano III* discussed all three equitable theories as indicated above, but it was decided two years after *Mandel I.* (See *Serrano III, supra,* 20 Cal.3d 25 at p. 39 [citing *Mandel I* as authority for the "substantial benefit" theory].) It has very recently been followed by another decision which retraces some of the same ground. (*Woodland Hills Residents Assn., Inc.* v. *City Council of Los Angeles* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200] (*Woodland Hills II.*) Both cases warrant analysis for the purpose of determining whether and how they affect the present appeal.

In *Serrano III,* the Supreme Court effectively established the continuing viability of the "common fund" and "substantial benefit" theories as discussed in *Mandel I,* but held that neither theory supported an award of attorneys' fees made as the result of antecedent public-interest litigation (*Serrano II*) in the action. (*Serrano III, supra,* 20 Cal.3d 25 at pp. 31-32, 35-42.) The court then established the precedent we had found wanting (when *Mandel I* was decided) by holding that the award was supported by the "private attorney general" theory because it compensated the plaintiffs' attorneys for their services in vindicating an important interest of *constitutional* dimensions. (*Id.,* at pp. 42-47.) The court expressly left open the question whether the theory might have that effect "where the litigation at hand has vindicated a public policy having a statutory, as opposed to, a constitutional basis." (P. 47.) More significantly for our purposes, the court set out a formulation of the factors which are to be taken into account in determining the *amount* of a pertinent award of attorneys' fees in the exercise of judicial discretion. (Pp. 48-49.)

Updating some of the *Serrano III* principles, the *Woodland Hills II* court essentially reaffirmed the validity of the "substantial benefit" theory as such, but held that it did not support an award of attorneys' fees sought in connection with antecedent litigation (*Woodland Hills I*) in that case (*Woodland Hills II, supra,* 23 Cal.3d 917 at pp. 942-943); held that the award might nevertheless be recoverable under the "private attorney general" theory, in principle, on the ground (among others) that the Legislature had effectively codified that theory by enacting Code of Civil Procedure section 1021.5, into law, in 1977, without limiting its application to public-interest litigation of constitutional dimensions as *Serrano III* had done (*Woodland Hills II, supra,* at pp. 930-931); held in passing that

section 1021.5 applied in all pertinent cases which were pending on appeal when it took effect on January 1, 1978 (pp. 924-925, 930-933); and established the evidentiary and related prerequisites of an award of attorneys' fees pursuant to the statute. (Pp. 933-942.) The *Woodland Hills II* court did not reach any questions relative to the *amount* of any such award, nor did it mention the *Serrano III* formulation on that subject. (See *Serrano III, supra,* 20 Cal.3d 25 at pp. 48-49.)

*Serrano III* and *Woodland Hills II* thus confirm the validity of the "substantial benefit" theory which we applied to the present case when we affirmed the initial $25,000 award of attorneys' fees in *Mandel I.* (See *Mandel I, supra,* 54 Cal.App.3d 596 at pp. 621-623; *Serrano III, supra,* 20 Cal.3d 25 at p. 39.) Because ours is a "substantial benefit" case, it is not reached by the *Serrano III* and *Woodland Hills II* points which established and updated the application of the "private attorney general" theory only. This means that *Woodland Hills II* does not subject the present appeal to Code of Civil Procedure section 1021.5, nor to the evidentiary and related prerequisites it established, for purposes of that theory. It also means that *Serrano III* does not affect this appeal *except* for the formulation it spelled out relative to the *amount* of an award of attorneys' fees in public-interest litigation. That formulation survived *Woodland Hills II,* which did not mention it. ■ It is therefore controlling here if it reaches the present award in point of time, and if it applies to an award of attorneys' fees made under the "substantial benefit" theory.

Although *Serrano III* was decided after the award before us was made, both parties have cited it on the premise that it applies on this appeal. Respondent's motion for the award was made and granted after publication of the federal and other authorities upon which the *Serrano III* formulation was based in substantial part. (See *Serrano III, supra,* 20 Cal.3d 25 at p. 48, fn. 23 [citing *City of Detroit* v. *Grinnell Corporation* (2d Cir. 1974) 495 F.2d 448, 470; *Lindy Bros. Bldrs., Inc. of Phila.* v. *American R. & S. San. Corp.* (3d Cir. 1973) 487 F.2d 161, 167-169; Dawson, *Lawyers and Involuntary Clients in Public Interest Litigation* (1975) 88 Harv.L.Rev. 849, 925-929].) The context of *Serrano III* does not indicate that the formulation represented a change in California law, and we do not perceive that it did. (See *People* v. *Heredia* (1971) 20 Cal.App.3d 194, 199 [97 Cal.Rptr. 488].) The formulation accordingly reaches the present award in point of time.

As was pointed out in the federal decision cited and quoted for the formulation in *Serrano III,* it comes into play "once it is recognized that

the court's role *in equity* is to provide just compensation for the attorney . . . ." (*City of Detroit I, supra,* 495 F.2d at p. 470 [italics added]. See also *Lindy I, supra,* 487 F.2d 161 at p. 167; *Serrano III, supra,* 20 Cal.3d 25 at p. 48, fn. 23.) The "substantial benefit" theory involves an exercise of the equitable powers of a court: i.e., of its "role in equity." (Cf. *Serrano III, supra,* at pp. 34, 38.) The *Serrano III* formulation therefore applies to the award made pursuant to that theory in the present case. The question is whether the trial court correctly applied it in fixing the amount of the award at $75,000.

The *Serrano III* court spelled out the formulation in the course of reviewing an award made by the trial court as compensation for the services of the successful plaintiffs' attorneys in the antecedent litigation cited as *Serrano II.* (*Serrano III, supra,* 20 Cal.3d 25 at pp. 31-32, 48-49.) The award covered services rendered by two separate publicly funded law firms and by certified law students who had worked on the case in association with both. Affirming it, the Supreme Court expressed the formulation in this language:

"Fundamental to . . . [the trial court's] . . . determination—and properly so—was a careful compilation of the time spent *and* reasonable hourly compensation of *each attorney* and certified law student involved in the presentation of the case. That compilation yielded a total dollar figure of $571,172.50, of which $225,662.50 was applicable to . . . [one firm] . . . , $320,710 to . . . [the other] . . . , and $24,800 to time spent by certified law students. Using these figures as a touchstone, the court then took into consideration various relevant factors, of which some militated in favor of augmentation and some in favor of diminution. Among these factors were: (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing law suits of the character here involved; (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed; and (7) the fact that in the court's view the two law firms involved had approximately an equal share in the success of the litigation. Taking all of these factors into consideration, the court proceeded to make a total award in the

amount of $800,000, to be shared equally by each of the two law firms representing plaintiffs.

"The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' [Citations.] We find no abuse of discretion here." (*Serrano III, supra,* 20 Cal.3d 25 at pp. 48-49 [fns. omitted].)

■ The present trial court's above-summarized findings and conclusions demonstrate that the *Serrano III* formulation was not followed. The only "findings" relative to the *time* spent by respondent's attorneys on *Mandel I* are the oblique references, in finding No. 13, to the "substantial amount of time" they "expended" and to "the hours spent on the appeal as shown in the record." Neither is a finding of the time actually spent by either attorney or by both. The court did not find the value of the services of either on a per-hour or other unit-of-time basis.

The elaborate findings made thus covered "various relevant factors, of which some militated in favor of augmentation" (*Serrano III, supra,* 20 Cal.3d 25 at p. 49) but, because the essential factors of time and unit value were not found, their arithmetical product is missing as the base to be augmented. If and when they had been found and calculated together in the first instance, the full range of discretion vested in the trial court in such matters would properly have come into play when it made further calculations by way of "augmentation" or "diminution" of the base figure. (*Ibid.*) ■■■ ■■ An abuse of that discretion is established because the court exercised it other than from the base figure, which was "[f]undamental" to the determination of the award. (*Serrano III, supra,* at p. 48.) The abuse of discretion requires reversal of the award as to its amount.[6]

_____

[6]The *fundamental* nature of the time and unit-value factors means that each presents a material issue upon which an explicit finding would be indispensable in any case where formal findings are mandatory. (*Guardianship of Brown* (1976) 16 Cal.3d 326, 332-333 [128 Cal.Rptr. 10, 546 P.2d 298].) Formal findings become mandatory when requested by a party "upon the trial of a question of fact by the court." (Code Civ. Proc., § 632; rule 232, California Rules of Court; *Guardianship of Brown, supra,* at p. 332.) Such "trial" was conducted on respondent's motion for attorneys' fees, and formal findings were requested, but they are not ordinarily required in proceedings upon a motion. (*In re Marriage of Simmons* (1975) 49 Cal.App.3d 833, 836 [123 Cal.Rptr. 213].) Formal findings were similarly requested and made on the motion for attorneys' fees which produced the award affirmed in *Serrano III* (see 20 Cal.3d 25 at p. 32), but the Supreme Court reviewed them without holding that they had been required. The decision does establish (1) that an award of attorneys' fees in a case of this nature must be supported by a record

Discussion of five additional matters is required because of their pertinence on the appeal or to the remand necessarily ordered below.

(1)

Respondent has requested an award of fees for the services of her attorneys on *this* appeal. A similar request was not acted upon in *Serrano III*, but was remanded to the trial court for consideration. (*Serrano III, supra,* 20 Cal.3d 25 at pp. 49-50.) A similar request was given the same disposition in *Woodland Hills II* on the stated grounds that it had not been fully briefed and all interested parties had not been heard on it. (*Woodland Hills II, supra,* 23 Cal.3d 917 at p. 948, fn. 15.) Decisions cited in the *Serrano III* disposition establish that the Supreme Court withheld any indication that an award of attorneys' fees on that appeal was recoverable at all. (See *Serrano III, supra,* at p. 50 [citing *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 483, 485 (119 Cal.Rptr. 215, 531 P.2d 783); *No Oil, Inc.* v. *City of Los Angeles* (1975) 13 Cal.3d 486, 487 [119 Cal.Rptr. 216, 531 P.2d 784].) The *Woodland Hills II* disposition incorporated the same noncommittal effect by reference. (See *Woodland Hills II, supra,* fn. 15 [citing *Serrano III*].)

For these reasons, no court has yet decided whether a party entitled to an award of attorneys' fees in public-interest litigation may be entitled to an additional award *on appeal* from one made (as in *Serrano III* and here) or from a judgment denying one (as in *Woodland Hills II*). In contrast to *Woodland Hills II*, however, the question was fully briefed in the proceedings on rehearing in the present case.[7] We therefore undertake to answer it in terms which are necessarily limited to this appeal only.

In the first place, respondent has prevailed on this appeal to the limited extent that we have held her entitled to *an* award for the services of her attorneys on the appeal in *Mandel I.* She has not been required to establish that point because appellants conceded it. She is consequently

showing, in formal findings or otherwise, that it was calculated from a base "compilation of the time spent and reasonable hourly compensation of each attorney" and (2) that an abuse of discretion appears in the absence of such showing. (*Id.,* at pp. 48-49.) Reversing the present award on the latter basis, we do not reach the question whether formal findings became mandatory when they were requested on respondent's motion.

[7]It was briefed by parties to the ongoing proceedings in *Serrano III* and *Woodland Hills II.* They entered this cause, as amici curiae, in apparent anticipation of supernumbered appeals dealing with the question in both of those cases.

not a prevailing party, on this appeal, in any real sense which would entitle her to the award requested.

Moreover, the theoretical ground which has previously supported awards of attorneys' fees in this case is no longer applicable. On *Mandel I*, we affirmed the $25,000 award made for her attorneys' pre-appeal services by holding that it was valid, under the "substantial benefit" theory, because of the benefits realized by "the citizens and taxpayers of this State" from the constitutional and monetary consequences of the judgment we affirmed on its merits. (*Mandel I, supra*, 54 Cal.App.3d 596 at pp. 622-623.) Respondent's request for an award of attorneys' fees on that appeal (i.e., on *Mandel I* proper) was remitted to the unbridled discretion of the trial court. (*Mandel I, supra*, at p. 624.) Now that it has been made, it is designed to compensate the same attorneys for their services in defending the same judgment on the appeal. Those services were indistinguishably rendered to "the citizens and taxpayers of this State" whose interests were at stake while the judgment was. Consequently, and as appellants have effectively conceded, the present award is also valid under the "substantial benefit" theory which reached the attorneys' services on the former appeal.

■ However, the "substantial benefit" produced in *Mandel I* was fully realized when our decision on that appeal became final. The stake on this one is not the constitutional principle now perpetually established in the public interest, but the amount of the attorneys' fees earned in the process of establishing it. Respondent's attorneys are therefore representing essentially their own interests at this time, as distinguished from those of the public to whom the benefits of the antecedent litigation stand secured. In consequence, the "substantial benefit" theory may not now be applied in their favor. Analogous decisions involving application of the "common fund" theory support this conclusion in principle. (See *Gabrielson* v. *City of Long Beach* (1961) 56 Cal.2d 224, 229-230 [14 Cal.Rptr. 651, 363]; *City of Detroit* v. *Grinnell Corp.* (2d Cir. 1977) 560 F.2d 1093, 1102-1103 [second appeal]; *Lindy Bros. Builders, Inc.* v. *Am. Radiator, etc.* (3d Cir. 1976) 540 F.2d 102, 111 [second appeal].) No award of fees is to be made for the services of respondent's attorneys on this appeal.[8]

---

[8]As pertinent here, the judgment states: "If there is an appeal from this Judgment, the Court may again consider the efforts and results of Plaintiff's attorneys on such appeal and may in its discretion award them further attorneys' fees thereafter." The trial court will not have jurisdiction to do this unless we invest it. (*American City Bank* v. *Zetlen* (1969) 272 Cal.App.2d 65, 66-70 [76 Cal.Rptr. 898] [cited in *Mandel I, supra*, 54 Cal.App.3d 596 at p. 624].) We expressly withhold it.

(2)

As mandated by *Serrano III,* the evidence to be offered on remand should commence with clear proof of the crucial factors: i.e., the time reasonably spent by each attorney on *Mandel I* and his "reasonable hourly compensation." (*Serrano III, supra,* 20 Cal.3d 25 at p. 48.) The first factor should be limited to time spent on the merits of the appeal, and should not include peripheral activities unless they may be shown to have contributed to the result reached. (See fn. 2, *ante.*) Useful guidance on the second factor appears in the federal decisions cited in *Serrano III,* as follows:

"The value of an attorney's time generally is reflected in his normal billing rate. A logical beginning in valuing an attorney's services is to fix a reasonable hourly rate for his time—taking account of the attorney's legal reputation and status (partner, associate). Where several attorneys file a joint petition for fees, the court may find it necessary to use several different rates for the different attorneys. Similarly, the court may find that the reasonable rate of compensation differs for different activities." (*Lindy Bros. Bldrs., Inc. of Phila.* v. *American R. & S. San. Corp., supra,* 487 F.2d 161 at p. 167 [as partly quoted in *City of Detroit* v. *Grinnell Corporation, supra,* 495 F.2d 448 at p. 473]. See also Dawson, *op. cit. supra,* 88 Harv.L.Rev. 849 at pp. 927-928.)

Having developed a base figure from this proof, the court is to proceed by way of augmenting or diminishing it. (*Serrano III, supra,* 20 Cal.3d 25 at p. 49.) The broad discretion to be exercised at that point should not be restricted by ritualistic "litanies" of the various factors to be proved or considered. (See Dawson, *op. cit. supra,* 88 Harv.L.Rev. 849 at p. 927.) It will suffice to state that some of the seven factors approved in *Serrano III* may be applied in the court's discretion but do not limit it.

(3)

Those factors do not include, nor should the final findings reflect, the attribution of bad faith to the Attorney General which is suggested in present finding No. 9 (quoted in fn. 5, *ante*). If his tactics in *Mandel I* increased the demands made on respondent's attorneys' time, the result will appear in the trial court's base-figure compilation. There is no occasion to impute it to impropriety on his part. From the vantage we held when we decided the former appeal, we may state that he pursued it in total good faith. The contrary imputation in finding No. 9 is unsupported.

### (4)

We also observe that the precept quoted in *Serrano III*, holding that " '[t]he experienced trial judge is the best judge of the value of professional services,' " is expressly directed to services " 'rendered *in his court*.' " (*Serrano III*, *supra*, 20 Cal.3d 25 at p. 49 [italics added].) The expression does not limit his competence to evaluate services rendered on appeal in another court, but that function may require more by way of objective proof than he would need with regard to a professional performance he has personally witnessed.[9] It might well be provided—or his own evaluation buttressed—by expert testimony, a reliable resource which has not been employed in this case despite its common use in the evaluation of attorneys' services. (See Witkin, Cal. Evidence (2d ed. 1966) § 422, p. 381; 1 Witkin, Cal. Procedure, *op. cit. supra*, Attorneys, § 96, pp. 105-106.)

### (5)

The last matter surfaced when respondent filed, with her petition for hearing, a "motion to vacate [the previous] decision and dismiss appeal, or to modify [the previous] decision on grounds of . . . contempt of the superior court." The previous decision having been vacated when we granted the petitions for rehearing, there remains only the motion to dismiss. The "contempt of the superior court" cited as its ground apparently originates from the asserted fact that the state has not yet paid the initial $25,000 award of attorneys' fees which we affirmed on the former appeal. (See *Mandel I*, *supra*, 54 Cal.App.3d 596 at pp. 602 [fn. 1], 619-623.) Respondent attributes the omission to the Attorney General, who is charged with having frustrated necessary appropriations by misrepresenting to the Legislature that the $25,000 award is invalid or questionable.

The motion suggests the distressing prospect of a confrontation between the legislative and judicial branches of government, but this court is not presently in a position to resolve the problem. The motion lacks a supporting record, and we rejected one which respondent

---

[9]The observation is pertinent because at least one of the present findings overstates the efforts of respondent's attorneys on *Mandel I*. We refer to finding No. 10, which cites their "resourcefulness" with regard to the "interplay of various sections of the Government Code." (See the text at fn. 4, *ante*.) The "interplay" discussion in *Mandel I* reflects the work of this court alone, which was undertaken because the appeal required it and the parties' briefs did not explore it. We do not disparage the work of respondent's attorneys by identifying something they did not do.

attempted to file in an improper manner. There is no indication that there has been an adjudication of contempt in the trial court, where any proceeding in that direction should be pursued. Although the $25,000 obligation was validly imposed on the state by the initial judgment, and the latter became final after we affirmed it on the previous appeal (see *Mandel I, supra,* 54 Cal.App.3d 596 at p. 624), we have no valid basis for enforcing it on this one. The motion left pending must be denied.

Respondent's motion to dismiss the appeal is denied. The judgment is affirmed insofar as it establishes that respondent is entitled to an award of fees for the services rendered by her attorneys on the previous appeal in this action. As to the amount awarded, the judgment is reversed and the cause is remanded to the trial court with directions to proceed consistent with the views expressed in this opinion. No party shall recover costs on the present appeal.

Christian, J., and Paik, J.,* concurred.

On May 31, 1979, the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied August 27, 1979. Bird, C. J., and Manuel, J., did not participate therein.

---

*Assigned by the Chairperson of the Judicial Council.