[Civ. No. 57982. Second Dist., Div. Two. Apr. 16, 1981.]

J. DAVID JUTKOWITZ, Plaintiff and Appellant, v.
BOURNS, INC., Defendant and Respondent.

104

COUNSEL

Hillel Chodos for Plaintiff and Appellant.

Beardsley, Hufstedler & Kemble, Seth M. Hufstedler, Jerome
H. Craig, Kindel & Anderson, Manuel S. Klausner and Jon A.
Longerbone for Defendant and Respondent.

OPINION

**COMPTON, J.**—Plaintiff and defendants, in a class action, effected, with court approval, a negotiated settlement. One facet of the settlement agreement provided that the court could conduct a hearing and determine the amount of attorneys fees to be awarded to plaintiff's counsel. The result was an award of $90,000. Plaintiff has appealed contending that the award was inadequate. We affirm.

Bourns, Inc., the defendant in the action, is a California based corporation engaged in engineering on an international scale. In 1974, stock in Bourns, Inc. was publicly traded on the New York Stock Exchange. Seventy-five percent of the stock, however, was held by Marlan Bourns and his family and only 25 percent was publicly held.

That percentage ratio was significantly altered when in October of 1974, Bourns, Inc. made a tender offer to purchase the publicly held shares for $11.50 a share. That offer was accepted by the holders of approximately 15 percent of the publicly held shares, leaving only 10 percent outstanding. This 10 percent consisted of 265,000 shares held by 2,300 shareholders. Among this latter group were plaintiff J. David Jutkowitz, and two other individuals, Manuel Gottdenker and David Cohn.

Apparently, as a result of the Bourns family's desire to take the corporation "private," Bourns, Inc., in July of 1975, arranged a merger plan which would result in retiring the remaining publicly held shares at $10 a share.

The above mentioned Manuel Gottdenker, on July 10, 1975, filed a class action in the Superior Court of Riverside County on behalf of himself and the other minority shareholders. Plaintiff Jutkowitz filed a similar action on September 17, 1975, in the Los Angeles Superior Court, and obtained a preliminary injunction preventing Bourns, Inc. from carrying out any transaction which would compel retirement of the publicly held shares.

Subsequently, David Cohn filed shareholders derivative action on behalf of Bourns, Inc. against the Bourns family and others in both federal and California courts.

As a result of unrelated litigation in the federal court, concerning the subject of corporate merger, Bourns, Inc. abandoned its proposed merger plan and by stipulation Jutkowitz' injunctive action was dismissed as moot. Apparently, however, the Cohn and Gottdenker actions remained pending though dormant.

In the injunction proceedings (referred to by the parties as Jutkowitz I) the trial court awarded Jutkowitz $75,000 in attorneys fees as against Bourns, Inc. on the theory that a "substantial benefit" had been conferred on the corporation by the thwarting of the merger plan.

On appeal by Bourns, Inc., Division Four of this court in *Jutkowitz v. Bourns, Inc.\** (Cal.App.), reversed the award of attorneys fees on the grounds that no common fund had been generated and there existed no other basis for the awarding of attorneys fees against an adversary. The California Supreme Court denied a hearing but ordered the opinion depublished.

While the effect of the Supreme Court order in "depublishing" the Court of Appeal opinion is to deprive it of any precedential value as to the legal issue involved, plaintiff concedes that the result is res judicata as to any claim by him for fees for legal services rendered in connection therewith. (Cal. Rules of Court, rule 977.)

In December of 1976, Bourns, Inc. publicly announced that it was proposing to settle the Gottdenker case in the Riverside Superior Court by offering to purchase all outstanding shares at $17 a share.

This brings us then to the critical juncture in the sequence of events. Jutkowitz, on January 4, 1977, filed the present action (Jutkowitz II) for declaratory and injunctive relief on behalf of himself and all remaining minority shareholders, alleging that the shares were worth more than the $17 offered and that the proposed settlement, albeit subject to approval of the superior court in Riverside County, was a sham and a collusive attempt to "squeeze out" the minority shareholders at an unfair price. He sought to enjoin any further attempt by Bourns to "go private."

The Superior Court of Los Angeles County issued a preliminary injunction prohibiting Bourns from "instituting, announcing, or

---

*Reporter's Note: Deleted on direction of Supreme Court by order dated March 16, 1978.

implementing any plan of merger, reverse stock split, or other plan, having the object of effecting the compulsory retirement or elimination of the ownership interests of plaintiff and the other public shareholders." It was further ordered "that nothing herein contained shall restrain or prevent the defendants from pursuing their efforts to arrive at a settlement with the plaintiff in the action of Gottdenker v. Bourns, Inc. (Riverside Super. Ct. No. 112762) and other members of his class (i.e., those public shareholders who elect voluntarily, together with said plaintiff, to accept such a settlement), either by paying said persons $17 per share, or any other sum of money, or otherwise; so long as such settlement does not involve any reorganization of the corporate structure of defendant Bourns, Inc."

In May of 1977, David Cohn settled his action in the federal court with Bourns, Inc. agreeing to purchase the outstanding shares at $24 per share. Subsequently, in June 1977, and before Jutkowitz was able to have his action certified as a class action, Bourns, Inc. made a tender offer to all outstanding shareholders to purchase the stock at $24 per share.

On June 8, 1977, counsel for Jutkowitz addressed a letter to the public shareholders concerning this tender offer. In it he opined that the Bourns stock had a significantly, albeit unknown, higher value than the $24 tendered.

Recognizing that there was yet no class approved in the Jutkowitz II litigation, counsel confessed that representation could not be afforded in advance of the formation of the class. The shareholders were advised that the decision to accept the Bourns $24 tender, or to refuse the offer and await the formation of a class, was solely up to the individual stockholder and that neither Jutkowitz nor his counsel could offer any recommendation.

While the $24 offer was open and before the class was certified, 225,000 shares were retired by shareholders who accepted the Bourns, Inc. offer. When the class was finally certified in Jutkowitz II in October of 1977, only 34,327 public shares were left to be represented.

Ensuing negotiations resulted in a settlement agreement on April 20, 1978, with the person holding the remaining 34,327 shares receiving $28.75 per share. Twenty-six dollars was allocated to share value and $2.75 to all other claims. The settlement also provided that Bourns, Inc.

would not oppose an award of up to $90,000 for attorney fees, plus an additional $5,000 for expenses. Any of the $95,000 not thus awarded was to be distributed pro rata to the shareholders.

Jutkowitz' counsel then noticed a motion to require Bourns, Inc. to pay an additional $451,000 on account of services rendered on behalf of those shareholders who were not members of the certified class and who had accepted the offer of $24 per share. The aggregate claim for attorney fees amounted to $519,584,[1] plus the $5,000 expenses. As noted, the trial court awarded the $90,000, which Bourns did not oppose.

The trial court's computation of the fee was based upon $150 hourly rate for the number of hours which counsel devoted to the litigation augmented by a factor or multiplier of 50 percent as a result of the complexity of the litigation, the results achieved and the contingency of the award.

■ In allocating fees for attorney's services in class actions "'The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts.'" (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, at p. 48, fn. 23 [141 Cal.Rptr. 315, 569 P.2d 1303].)

This method of calculation, i.e., using time expended as the starting point or "lodestar" factor has been followed in both federal and California courts and at present is the prevailing method for fixing fees in class actions. (*Serrano* v. *Priest, supra*; *Lindy Bros. Bldrs., Inc. of Phila.* v. *American R. & S. San. Corp.* (3d Cir. 1973) 487 F.2d 161; *City of Detroit* v. *Grinnell Corporation* (2d Cir. 1974) 495 F.2d 448; *Mandel* v. *Lackner* (1979) 92 Cal.App.3d 747 [155 Cal.Rptr. 269]; *Coalition for L.A. County Planning etc. Interest* v. *Board of Supervisors* (1977) 76 Cal.App.3d 241 [142 Cal.Rptr. 766].)

Plaintiff's claim to an augmentation of the award in this case is predicated on the notion that Bourns, Inc. offer of $24 per share ($7

---

[1]This figure was computed on the basis of $2 per share for all shares purchased after issuance of the preliminary injunction.

more than that originally offered in settlement of the Gottdenker action) was the direct result of his obtaining the preliminary injunction prohibiting further actions in the Gottdenker settlement. Thus, according to plaintiff, although the final settlement of this litigation involved a class consisting only of the holders of 34,000 shares, the holders of the remaining 225,000 benefited from his efforts and are equitably obligated to compensate him and his counsel for that benefit.

Plaintiff also advances a number of theories by which he attempts to establish the liability of the corporate defendant to pay the additional compensation which he seeks. Any discussion of those theories, however, must be preceded by an analysis of the basis for his claim to equitable compensation and a determination of whether the award given was an abuse of the discretion vested in the trial court in determining what is adequate compensation. (*Mandel* v. *Lackner, supra; Serrano* v. *Priest, supra.*)

To the extent that plaintiff's claim is grounded on the benefit he allegedly procured for the minority shareholders by raising the price from $17 to $24, it is a resort to the common fund principle which has been developed in equity.

The common fund principle, upon which Jutkowitz seeks to base his fee award was described in identical language in both *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], and *Serrano III, supra*, at page 34: "[W]hen a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund." (Also see *Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240 [44 L.Ed.2d 141, 95 S.Ct. 1612].)

Clearly plaintiff's counsel did not enjoy an attorney-client relationship with the holders of the above mentioned 225,000 shares, either by direct contract or as a result of being part of the class he purported to represent.

It is true that in *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328 [124 Cal.Rptr. 513, 540 P.2d 609], a

case in which counsel instituted an action on behalf of an employees association and which action was not prosecuted as a class action, the Supreme Court said, at page 341, footnote 19: "It is not necessary to find this suit a proper class action in order to uphold the portion of the judgment awarding counsel for plaintiffs 25 percent of all retroactive salaries and wages received. That award may be sustained under the rule that a litigant who creates a fund in which others enjoy beneficial rights may require those beneficiaries to pay their fair share of the expense of litigation."

The critical point, however, is that in *Glendale* a fund was created from which the attorney fees could be paid.

Significantly, in none of the "common fund" cases, whether class actions or nonclass actions, such as *Glendale, supra*, is there any suggestion that *the size of the fund controls the determination of what is adequate compensation.*

Plaintiff seems to assume that had he been successful in certifying the entire group of minority shareholders as a class and thereby created a fund much larger than the one of $90,000 which was actually created, a fortiori the fee would have been substantially greater.

In extending this notion, he contends that even though Bourns, Inc. successfully, albeit legally, "bought out" the majority of the prospective class prior to certification, there existed equitable obligation on the part of that majority to compensate him and that that obligation shifted to Bourns, Inc. when Bourns acquired the shares "subject to that obligation."

It appears to us that plaintiff's argument is an attempt to engraft a "contingent fee" concept on to the equitable common fund doctrine.

In our opinion, the clear thrust of the holding in *Serrano, supra*, and the cases upon which that holding relied, is a rejection of any "contingent fee" principle in cases involving equitable compensation for lawyers in class actions or other types of representative suits.

The concept of the class action is to provide a unitary and wieldy procedure for the vindication of relatively small claims by a large number of persons. It is not a vehicle for "fee hunting" by lawyers.

Equitable, professional and economic considerations dictate that a lawyer who undertakes the salutary role of prosecuting a successful class action should be fairly and adequately compensated for his efforts.

On the other hand, as was stated in *Serrano* v. *Priest, supra*, favorable public perception and the prestige of the legal profession and our system of justice, requires a formula for computation which can be objectively measured.

While the size of the class may affect the complexity of counsel's task and the size of the fund created may reflect the quality of his work, the correct amount of compensation cannot be arrived at objectively by simply taking a percentage of that fund.

In the case at bench the expertise of counsel, and the hours devoted to the case by him, would remain unchanged whether the class consisted of 100 or 1,000 persons and the fund amounted to $200,000 or $2 million. One hundred fifty dollars per hour is a fee that can be commanded only by the most skillful of attorneys and it cannot be said that an increase of an additional 50 percent in any way denigrates the value of counsel's service.

Any piece of significant litigation has the potential for indirectly benefiting persons who are not parties to that litigation. Cases which result in appellate decisions changing or expanding the law, especially and undoubtedly, redound to the benefit of a number of persons. The efforts of counsel in that litigation, however, are not patentable or copyrightable so that counsel can expect royalties from those who later put the results of those efforts to their own use.

In summary, we conclude that even giving plaintiff's counsel "credit" for the increased price, which persons who were not members of the class were able to obtain for their shares, would not entitle him, as a matter of law, to a higher fee. The fee which was awarded was not an abuse of the trial court's discretion in applying the common fund principle. Furthermore, Bourns, Inc. would not be liable for any obligation to compensate Jutkowitz which might have been owned by those shareholders.

Proceeding now from plaintiff's claim for equitable compensation from the shareholders and his corollary theory of the assumption of that

obligation by Bourns, Inc., we move to plaintiff's other theories for an award of attorney fees against Bourns, Inc. directly. These are the so-called substantial benefit and private attorney general theories.

■ Throughout, plaintiff has sought fees directly from Bourns, Inc. and not from the shareholders who allegedly benefited from his counsel's services. It is clear, however, that at all times, Bourns, Inc. was an adversary. This was not a derivative action by a shareholder on behalf of the corporation.

The general rule as codified in Code of Civil Procedure, section 1021, is that in the absence of a specific statutory provision or contractual agreement, attorney fees are not part of the costs that can be shifted to an adversary.

As earlier noted, the courts, acting under their inherent equity power, have created certain exceptions to the rule. One such exception is the "substantial benefit" doctrine.

This doctrine is an extension of the common fund principle and is designed to cover situations where a substantial *nonpecuniary* benefit has been bestowed on a party or parties. (*Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313 [72 Cal.Rptr. 146].)

As in the case of the common fund principle, the substantial benefit rule provides for the imposition of the fees on persons benefited and cannot be applied to shift the responsibility for payment of those fees to the adversary upon whom no benefit was conferred. (*D'Amico* v. *Board of Medical Examiners, supra; Anthony* v. *Superior Court* (1976) 59 Cal.App.3d 760 [130 Cal.Rptr. 758]; *County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82 [144 Cal.Rptr. 71].)

In *Mills* v. *Electric Auto-Lite* (1970) 396 U.S. 375, at page 394 [24 L.Ed.2d 593, at pages 607-608, 90 S.Ct. 616], the court recognized an exception to that above mentioned rule and permitted reimbursement from the nominal adversary in cases where the effect is to place the burden of fees upon the beneficiaries. As the court said in *Mills*, at pages 393-394 [24 L.Ed.2d at page 607], the substantial benefit principle can be extended: "[T]o permit reimbursement in cases where the litigation has conferred a substantial benefit on the members of an

ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that *will operate to spread the costs proportionately among them.*" (Italics added.)

Here no benefit was conferred on Bourns, Inc. as a result of the Jutkowitz II litigation and settlement. Jutkowitz endeavored to frustrate the corporation's efforts to "go private." The fact that the corporation was able to realize its goal after the settlement was not the result of Jutkowitz' efforts. Creating a roadblock and then removing it cannot be viewed as a beneficial clearing of an adversary's path.

Jutkowitz, in pursuing this litigation, had a single objective and that was to benefit himself directly and other minority shareholders indirectly. No benefit to Bourns, Inc. was within his contemplation. Any award of fees imposed directly against Bourns could not possibly operate to spread the costs proportionately among those persons benefited.

Finally, plaintiff points to Code of Civil Procedure section 1021.5 as a basis for assessing fees directly against Bourns, Inc. That newly enacted statutory version of the private attorney general theory provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

We do not perceive the vindication of the pecuniary interests of the minority stockholders as affecting the public interest or conferring a significant benefit on the general public or a large class of persons. Further, the interests of justice would not militate against paying the fees out of the recovery.

In the final analysis, laying aside all of plaintiff's theoretical arguments for augmenting the fee awarded by imposition of liability on his adversary, the fact remains that in our opinion he has been adequately

compensated by the application of an objectively measurable formula for the computation of attorney fees.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied May 8, 1981.