[Civ. No. 46648. First Dist., Div. Three. July 24, 1980.]

MICHAEL J. FRANZBLAU, Plaintiff and Respondent, v. GEORGE D. MONARDO, Defendant and Appellant.

[Civ. No. 46649. First Dist., Div. Three. July 24, 1980.]

RAY CASTELL-BLANCH, Plaintiff and Respondent, v. GEORGE D. MONARDO, Defendant and Appellant.

[Civ. No. 47591. First Dist., Div. Three. July 24, 1980.]

MICHAEL J. FRANZBLAU, Plaintiff and Appellant, v. GEORGE D. MONARDO, Defendant and Respondent.

COUNSEL

Alvin H. Goldstein, Jr., Lawrence A. Callaghan and Goldstein & Phillips for Plaintiff and Appellant and Plaintiff and Respondent in Nos. 47591 and 46648.

James P. Nevin and Richard G. Burns for Defendant and Appellant and Defendant and Respondent.

Van Bourg, Allen, Weinberg & Roger and Stewart Weinberg for Plaintiff and Respondent in No. 46649.

OPINION

**SCOTT, Acting P. J.**—On November 7, 1978, appellant George Monardo was elected to the Board of Directors of the Marin Hospital District. Thereafter, respondent electors in the Marin Hospital District brought this action contesting appellant's election. Appellant appeals from a judgment annulling and setting aside his election. The court determined that appellant, as president of the Ralph K. Davies Medical Center in San Francisco, was ineligible to hold office as a director of the Marin Hospital District because of his disqualification pursuant to Health and Safety Code section 32110.

Health and Safety Code section 32110 is a conflict of interest statute making certain people ineligible to hold office as a director of a hospital district. The statute provides in relevant part: "No person possessing any property interest in, or owning any of the stocks, bonds, or other securities issued by, any private hospital serving the same area served by the district, or who is a director or other officer of any such private hospital, shall be eligible for or hold any district office, either as a member of the board, or an officer of the medical staff. No person who is a director or an officer of, or who occupies any management position or office whatsoever, on the administrative staff of any such private hospital, shall be eligible for or hold any district office or any management position or office whatsoever in any district hospital. The possession or ownership of such interest, stocks, bonds, or other securities by the spouse or minor children of any person shall be deemed, for the purposes of this section, to be the possession or interest of such person."

The facts here are essentially not in dispute. The Ralph K. Davies Medical Center, of which appellant is president, is a nonprofit private hospital located in San Francisco. For a number of years the hospital offered the Bay Area, including Marin County, certain specialty services: microsurgery, spinal cord injury, vascular surgery, and a macular unit. Vascular surgery has since become more widespread and the macular unit was moved to the University of California in 1976. However, the hospital is still unique in its spinal cord injury facilities and, perhaps to a lesser extent, in its microsurgery department. Marin County residents account for 2.18 percent of the Davies Medical Center in-patients. Estimates of patients coming from outside of San Francisco County are 39 percent in-patients, 35 percent out-patients. A brochure published by the hospital states that the normal patient census on any day could reveal as many as 47 percent of the hospital patients coming from outside San Francisco County. Other publications by the hospital state that Davies Medical Center is a hospital serving the Bay Area and Northern California. The Marin Hospital District falls within the provisions of Health and Safety Code section 32000 et seq. relating to hospital districts.

The trial court found that appellant, as president of the Davies Medical Center, is an officer of and occupies a management position with a private hospital serving the same area served by the Marin Hospital District, and as such was ineligible to hold office as a director of the Marin Hospital District.

■ Appellant initially contends that the superior court was without jurisdiction to hear and decide contests of election pursuant to Health and Safety Code section 32110.

"The statutory procedure to contest an election is...not available in elections in nonpolitical public service districts whose governing statutes do not provide for election contests or adopt the provisions of the Elections Code with respect thereto." (28 Cal.Jur.3d, Elections, § 198, p. 544; *Castle R. C. Fire P. Dist.* v. *Sup. Ct.* (1951) 105 Cal.App.2d 816, 820 [234 P.2d 726].) Appellant asserts that the statutes governing hospital district elections do not provide for election contests, and that, therefore, the lower court had no jurisdiction to hear the contest.

However, section 32002 of the Health and Safety Code provides that the manner of conducting the elections for local hospital districts shall be as in the manner provided in division 14 of the Elections Code (the Uniform District Election Law, § 23500 et seq.). Section 23502.5 of the Uniform District Election Law provides, in part: "Where neither the provisions of this part nor the provisions of the principal act apply, the general election laws of this state shall govern." Since neither the Uniform District Election Law nor the Health and Safety Code sets forth procedures for an election contest, it is clear that Elections Code section 20020 et seq., governing contests of general elections, apply to the instant case. Finally, since jurisdiction of election contests is lodged in the superior court by the constitutional provision vesting original jurisdiction in such court in all causes except those given by statute to other trial courts, the superior court had jurisdiction to hear the instant case. (Cal. Const., art. VI, § 10.)

Appellant next contends that Health and Safety Code section 32110 does not apply to nonprofit private hospitals. He asserts that the section applies only to proprietary private hospitals. The evidence is uncontradicted that Ralph K. Davies Medical Center, of which appellant is president, is a nonprofit hospital.

Health and Safety Code section 32110 was originally enacted in 1959, and read in pertinent part as follows: "No person possessing any property interest greater than 5 percent in, or owning more than 5 percent of the stocks, bonds, or other securities issued by, any private hospital serving the same area served by the district, or who is a director or other officer of any such private hospital, shall be eligible for or hold any district office, either as a member of the board or otherwise."

The statute was enacted by Senate Bill No. 1005. The bill memorandum evidencing the legislative intent provided: "Senate Bill 1005 prohibits a person owning a 5 percent interest in a private hospital serving as a member of the Board of the Hospital District in the same area." Appellant points to this language as supporting his contention that the ineligibility is directed only at hospitals capable of being owned, that is, proprietary hospitals, and is not directed at nonprofit hospitals of the type of which appellant is president. The legislation, however, exceeds that suggested in the bill memorandum. It clearly disables directors or other officers of private hospitals from holding district office, as well as persons owning a 5 percent interest in private hospitals. The bill memorandum is a mere summary of the statute and does not purport to provide an exhaustive list of persons ineligible to hold office as a director of a hospital district.

Health and Safety Code section 32110 was amended in 1970 to add: "No person who is a director or an officer of, or who occupies any management position or office whatsoever, on the administrative staff of any such private hospital, shall be eligible for or hold any district office or any management position or office whatsoever in any district hospital." The Legislative Counsel's Digest of Assembly Bill No. 831 (Knox, Feb. 23, 1970), which so amended section 32110, states that the amendment "[p]rohibits any director or officer, or member of management of administrative staff of any private hospital serving same area as served by hospital district from holding any district office or any position in any district hospital, with specific exception for member of district board at time act becomes effective." This statement clearly shows that the Legislature was not considering a distinction between profit and nonprofit hospitals. It was merely identifying those persons perceived to have a conflict of interest.

In 1977, the statute was amended to its present form by Senate Bill No. 1177 (Vuich, June 3, 1977). The Legislative Counsel's Digest of the bill states: "3. Under existing law, no person may hold office in a hospital district if the person owns or has an interest of more than 5% in any private hospital serving the area of the district. This bill would extend such provision to officers of the medical staff and remove the 5% exemption so that any interest would be prohibited." Again, nothing in this language suggests a legislative intent to distinguish between profit and nonprofit hospitals.

Appellant asserts that in the 1959 version of the statute those ineligible to hold district office were 1) owners of 5 percent or more of the stocks, bonds, or other securities issued by a private hospital, *or* 2) officers or directors of "any *such* private hospital" (italics added), that is, an officer or director of a hospital that issues stocks, bonds, or other securities. Appellant then reasons that since a nonprofit hospital does not issue stocks, bonds, or other securities, an officer or director thereof is not an officer or director of "any *such* hospital," as defined by the statute making him ineligible for directorship in a public hospital district. He argues that the modification of the section in 1977 to its present form merely eliminates the minimum 5 percent ownership requirement and substitutes any ownership in a hospital capable of being owned, and renders such owner or director of such hospital ineligible for office as a director of a district hospital. However, the word "such" as defined in Webster's Third New International Dictionary (unabridged), means "having a quality already or just specified—used to avoid repetition of a descriptive term." The only previous "quality" or "descriptive term" applied to the term "private hospital" in the statute is that the hospital serve "the same area served by the district." The property interest merely identifies persons perceived by the Legislature to own a sufficient interest in a private hospital as to create a conflict of interest should they serve on a hospital board in the same area. That language qualifies the persons, not the hospitals. The words "any such hospital" refer to any private hospital serving the same area. By this language the Legislature is making clear that a person having an interest in a hospital *outside* the area served by the district hospital is not ineligible to serve as a director.

■ We conclude, therefore, that Health and Safety Code section 32110 makes officers or directors, or managers of private nonprofit hospitals, as well as private proprietary hospitals, serving the same area as a public hospital ineligible to serve on the public hospital's board of directors.

■ Appellant next contends that the Ralph K. Davies Medical Center does not serve the same area as the Marin Hospital District.

The trial court held that the fact that over 2 percent of the hospital's in-patients consistently come from Marin County was a statistically significant figure because the population of Marin County is small compared with that of San Francisco and the outlying areas which the Davies Medical Center serves. This evidence was sufficient to support

the trial court's finding that the Davies Medical Center serves the same area as the Marin Hospital District, thus making appellant ineligible as described in section 32110.

Dr. Michael Franzblau appeals from the court's order denying him attorney's fees incurred in the successful contest of George Monardo's election to the district board of directors. Franzblau's claim of attorney's fees is based upon Code of Civil Procedure section 1021.5, which provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

Monardo contends here, as he did successfully below, that the "private attorney general" attorney fee doctrine as codified in Code of Civil Procedure section 1021.5 does not apply to lawsuits between private parties. We disagree.

The attorney fee allowance provisions of section 1021.5 is the outgrowth of a number of decisions culminating in *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]. In *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200], the court stated: "The doctrine [private attorney general] rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." The fundamental objective of the doctrine is "to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees...to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 27 [112 Cal.Rptr. 786, 520 P.2d 10].)

Nowhere is it suggested that an attorney fee award for a successful private attorney general lawsuit is limited to actions against public agencies. The statute itself appears to provide otherwise. It states: "With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, . . ." This sentence presupposes that there will be actions not involving public entities, i.e., actions, as here, between private individuals.

The court erred in failing to take evidence and make appropriate findings as to whether Franzblau is entitled to attorney's fees in accordance with the criteria set forth in Code of Civil Procedure section 1021.5.

We affirm the judgment, but reverse the court's order denying Dr. Franzblau attorney's fees.

Feinberg, J., and Dossee, J.,* concurred.

The petition of defendant and appellant for a hearing by the Supreme Court was denied September 17, 1980.

---

*Assigned by the Chairperson of the Judicial Council.