[No. A046189. First Dist., Div. Two. Apr. 23, 1991.]

COMMITTEE TO DEFEND REPRODUCTIVE RIGHTS et al.,
Plaintiffs and Appellants, v.
A FREE PREGNANCY CENTER et al., Defendants and
Respondents.

634

COUNSEL

Ann E. Menasche, Julise M. Johanson, Richard M. Pearl and Marsha Levick for Plaintiffs and Appellants.

Armando Menocal III as Amicus Curiae on behalf of Plaintiffs and Appellants.

Daniel J. Grimm and Michael D. Imfeld for Defendants and Respondents.

## OPINION

**PETERSON, J.**—Appellants, Committee to Defend Reproductive Rights and Carla Abbotts, appeal from an order of the San Francisco Superior Court denying their motion for attorney fees under Code of Civil Procedure section 1021.5 (hereafter section 1021.5), the private attorney general statute. They claim the trial court applied the wrong standard when denying their request for fees. We remand to the trial court for further proceedings.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On March 7, 1986, appellants filed a complaint in the San Francisco Superior Court seeking temporary and permanent injunctive relief based upon allegations of false advertising and unfair business practices. As eventually amended, the complaint named as defendants, respondents A Free Pregnancy Center (hereafter sometimes referred to as the center), Lourdes Foundation, Eileen O'Donnell, Pearson Foundation, Robert Pearson,

James Kopp, and Carolyn Connelly.[1] Essentially, appellants claimed respondents' operation of the center, a reproductive counseling facility, was fraudulent and illegal in that respondents falsely advertised the center was a medical facility which provided abortion counseling and referral, when in fact the center represented a pro-life viewpoint, provided no abortion counseling other than to recommend against abortion, and was not a medical facility. Appellants also charged respondents with running an illegal adoption center and with disseminating false and misleading information about the safety of abortions through written and visual material.

Four months after appellants filed their initial complaint, the San Francisco District Attorney filed a similar action in the San Francisco Superior Court on behalf of the People. Named as defendants were respondents the center, Lourdes Foundation, Pearson Foundation, James Kopp, Carolyn Connelly, and Carolyn Armstrong.[2] The district attorney sought injunctive relief and civil damages for respondents' alleged unfair business practices in falsely representing the services provided by the center, and for respondents' activities in operating an unlicensed adoption service.

The two suits were consolidated, and the matter proceeded to trial in late 1988. Appellants' complaint, inter alia, contained a cause of action not urged in the complaint of the People, which sought and obtained an injunctive order precluding respondents from disseminating certain false information about abortion safety. Appellants also obtained relief against parties not named in the People's complaint. After a six-week nonjury trial, the court issued its judgment and statement of decision against respondents restraining them from operating the center in such a way as to suggest abortion services were available there. A small fine was also imposed. Respondents elected not to appeal from this judgment.

Appellants then filed a motion for an award of attorney fees against respondents pursuant to section 1021.5. The attorneys representing appellants, Ann Menasche and Julise Johanson, submitted declarations claiming actual fees of $168,792.50 and asked that this amount be doubled to $337,585 because of the length and complexity of the case. The deputy district attorney representing the People in the consolidated action credited these counsel with spurring the involvement of his office in the litigation.

---

[1] Technically, a responding brief has been filed only on behalf of Lourdes Foundation, Eileen O'Donnell, Pearson Foundation, Robert Pearson, and Carolyn Connelly. No brief has been filed on behalf of the center or James Kopp. For ease of reference, we will refer to all defendants named below as respondents.

[2] Again, technically, no responding brief has been filed on Carolyn Armstrong's behalf. For ease of reference, we will refer to her too as being one of the respondents.

Respondents opposed the motion, arguing, inter alia, that appellants were not entitled to an award of fees because their suit was not necessary as that term is defined by section 1021.5. After extensive briefing and oral argument, the trial court agreed and denied appellants' request for fees.

This timely appeal followed.

II. DISCUSSION

The basic issue in this appeal is whether the trial court properly interpreted the requirements of section 1021.5. However, before we can reach the merits of this question, we must address a procedural matter.

A. *Adequacy of the Record*

The resolution of this appeal has been impeded by the unusual record appellants have presented to this court. Appellants elected to proceed via a settled statement rather than a reporter's transcript pursuant to rule 7 of the California Rules of Court;[3] however, the document they have provided is seriously deficient. The statement is merely a list of the witnesses at trial followed by a notation indicating the name of the attorney responsible for his or her direct or cross-examination. The witness's testimony is not individually explained in many instances. For others, only the briefest synopsis is provided. For example, Carolyn Connelly was a named defendant and one of the persons against whom appellants obtained a judgment. Yet we are only informed, "Ms. Connelly testified on cross-examination about her knowledge of Jane Doe's desire for an abortion and about falsifying documents to prevent Doe's parents from discovering Doe's pregnancy." The testimony of Eileen O'Donnell, another defendant, is similarly obscure as we are only informed, "Ms. O'Donnell testified on cross-examination about her contact with Carla Abbotts, as a volunteer at A Free Pregnancy Center."

The written record we have been provided suffers from a similar defect. Appellants elected to file an appendix in lieu of clerk's transcript pursuant to rule 5.1; however, the document submitted is almost unintelligible. Although we have been presented with six thick volumes containing over one thousand seven hundred pages, appellants have, by and large, included only their own pleadings. They have ignored the vast majority of documents submitted by respondents. Thus, we are left with the daunting task of deciphering the potential effect of oppositions to demurrers without the corresponding moving papers; motions to compel discovery without the

---

[3] All subsequent references to rules are to the California Rules of Court.

respondents' papers in opposition; and incredibly, pleadings resisting motions for summary judgment and summary adjudication without the corresponding moving papers.

Appellants apparently have elected to file this type of record because their appeal concerns a request for attorney fees. Thus, they have provided us with a record showing only the work they performed. However, presenting the appeal in this manner is less than adequate for several reasons. First, in order to place appellants' arguments into context, we must be able to ascertain the basic facts of the case with certainty and accuracy. The record as presented is entirely insufficient for this purpose. Second, an award of attorney fees in this type of case is largely within the trial court's discretion. (See *Baggett v. Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874].) It is difficult to evaluate the court's exercise of that discretion without a record detailing the facts upon which it was based, and upon which the nature and extent of the legal services of the district attorney can be measured and compared with those of private counsel in the consolidated cases they jointly pursued. Third, appellants refer to the facts of the case and to the pleadings they filed as justifications for their request for attorney fees. For example, appellants refer to Carolyn Connelly as a "key defendant" who was kept in the suit as a result of their actions. Yet the record before us fails to disclose what was "key" about Connelly's activities or how appellants succeeded in keeping her as a defendant.[4]

Appellants attempt to justify the record they have presented by charging that respondents, in some manner not clearly shown by appellants' record, were "noncooperati[ve]" with their attempts to prepare the record for appeal. While exhibits attached to the briefs on appeal arguably indicate respondents (and appellants) were apparently more concerned with legal maneuvering than with presenting an adequate record for our review, appellants themselves drafted the settled statement which we have found inadequate. Appellants bore the responsibility to include in their appendix all documents "essential to the proper consideration of the issues, including such documents as [they] should reasonably assume will be relied upon by the respondent[s] in meeting the issues raised . . . ." (Rule 5.1(b).) We admonish appellants for their failure to do so.[5]

---

[4] Appellants claim Connelly's motion for summary judgment was granted against the district attorney's suit but denied as to their suit. Although pleadings in the joint appendix indicate this may well have happened, we do not have a full record of the motions for summary judgment.

[5] We do not mean to suggest appellants were required to submit copies of all the documents filed in the court below or that a settled statement would never be appropriate in a case such as this. We merely require that more care be taken in presenting the record on appeal. A settled statement should include all facts upon which a party intends to rely and should provide

While the defective record appellants have filed provides sufficient grounds to reject their appeal outright (see *Maria P.* v. *Riles* (1987) 43 Cal.3d 1281, 1295-1296 [240 Cal.Rptr. 872, 743 P.2d 932]), we elect not to do so in this case. The sparse record presented is adequate to consider this appeal on the relatively narrow grounds we will discuss below.

### B. *Merits of the Appeal*

Section 1021.5[6] provides for an award of attorney fees to a successful party in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit has been conferred on the general public, or a large class of persons; (b) the necessity and financial burden of private enforcement are such as to make the award appropriate; and (c) such fees should not in the interest of justice be paid out of the recovery, if any. (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 317-318 [193 Cal.Rptr. 900, 667 P.2d 704]); *Californians for Responsible Toxics Management* v. *Kizer* (1989) 211 Cal.App.3d 961, 966 [259 Cal.Rptr. 599].)

This appeal concerns the second of these criteria, the necessity of private enforcement. This factor " 'looks to the adequacy of *public* enforcement and seeks economic equalization of representation in cases where private enforcement is necessary.' " (*City of Sacramento* v. *Drew* (1989) 207 Cal.App.3d 1287, 1299 [255 Cal.Rptr. 704], quoting Comment, *Court Awarded Attorney's Fees and Equal Access to the Courts* (1974) 122 U.Pa.L.Rev. 636, 671 (hereafter *Equal Access*), italics in *Drew*.) Where a private suit is brought against a governmental agency or official, the necessity of private enforcement is often obvious. A governmental agency cannot be expected to bring suit against itself. In such situations, private citizens must " 'guard the guardians.' " (*Equal Access, supra*, at p. 671.)

However, some privately enforced actions against individual defendants have been held to be necessary within the meaning of section 1021.5. "As a practical matter, public agencies cannot be expected to take every meritorious case." (*Best* v. *California Apprenticeship Council* (1987) 193 Cal.App.3d

---

a basic understanding of the underlying dispute. An appendix should comply with rule 5.1(b).

[6]"Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ." (Code Civ. Proc., § 1021.5.)

1448, 1468 [240 Cal.Rptr. 1].) "Although there are within the executive branch of the government offices and institutions (exemplified by the Attorney General) whose function it is to represent the general public . . . and to ensure proper enforcement [of the laws], for various reasons the burden of enforcement is not always adequately carried by those offices and institutions, rendering some sort of private action imperative." (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 44 [141 Cal.Rptr. 315, 569 P.2d 1303].)[7]

In rejecting appellants' request for attorney fees here, the trial court noted that the District Attorney of San Francisco was investigating respondents prior to the date on which appellants initiated their suit and, in fact, filed a similar suit shortly thereafter. Further, the court observed that appellants did not contact the district attorney prior to filing their suit. Thus, the trial court concluded appellant's suit was unnecessary stating, "The fact that [appellants'] attorney filed suit first, without contacting the District Attorney, does not entitle her to act as a private attorney general or to continue in the case after the District Attorney decided to proceed with the case. [¶] There is no evidence that the District Attorney ever refused the case against [A] Free Pregnancy Center or others. There is insufficient evidence that the District Attorney would not have proceeded with the case but for Ms. [Menasche's] investigation. . . . [¶] Thus, the Court concludes that it was unnecessary for [appellants'] counsel to act as a private attorney general in this matter; and, further, that it was unnecessary for her to continue with the litigation after the District Attorney's suit."

██ Appellants challenge the trial court's ruling primarily on the two grounds we will discuss here. They claim (1) the trial court erred when it held they were required to contact the district attorney prior to filing suit as a precedent condition to act as a private attorney general; and (2) their action should not be considered unnecessary within the meaning of section 1021.5 merely because, subsequent to filing their suit, the People, through the district attorney, filed a similar action.

Appellants' action was premised primarily upon respondents' alleged violation of the unfair business practice statutes. (See Bus. & Prof. Code,

---

[7] While attorney fees can be awarded against a private defendant under section 1021.5, such cases are rare. Since section 1021.5 was enacted in 1977, only a handful of cases have discussed an award of fees in that context. (See *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d 311; *Franzblau* v. *Monardo* (1980) 108 Cal.App.3d 522 [166 Cal.Rptr. 610]; *Jutkowitz* v. *Bourns, Inc.* (1981) 118 Cal.App.3d 102 [173 Cal.Rptr. 248]; *San Bernardino Valley Audobon Society, Inc.* v. *County of San Bernardino* (1984) 155 Cal.App.3d 738 [202 Cal.Rptr. 423]; *Braude* v. *Automobile Club of Southern Cal.* (1986) 178 Cal.App.3d 994 [223 Cal.Rptr. 914]; *Bartling* v. *Glendale Adventist Medical Center* (1986) 184 Cal.App.3d 97 [228 Cal.Rptr. 847]; *Washburn* v. *City of Berkeley* (1987) 195 Cal.App.3d 578 [240 Cal.Rptr. 784]; *Sokolow* v. *County of San Mateo* (1989) 213 Cal.App.3d 231 [261 Cal.Rptr. 520].)

§ 17200 et seq.) Under Business and Professions Code section 17204, an action for an injunction against unfair business practices may be prosecuted by the Attorney General, any district attorney, city attorneys of cities having a population in excess of 750,000, *"or by any person acting for the interests of itself, its members or the general public."*[8] (Italics added.) The courts of this state have interpreted this section to permit individuals and organizations to sue on behalf of the public for injunctive relief as private attorneys general. (*Consumers Union of United States, Inc.* v. *Fisher Development, Inc.* (1989) 208 Cal.App.3d 1433, 1439 [257 Cal.Rptr. 151].) Thus, the necessity of appellants' private pursuit of the present action is not foreclosed merely because they failed to obtain the approval of the district attorney before or after they filed the same, or solely on the basis of whether a subsequent similar action was filed by the People.[9]

Although we have been cited to no California authority directly on point, federal cases have held that private parties who cooperate with governmental officials in litigation are not barred, by reason of the latter's participation therein, from recovering attorney fees.[10]

For example, in *Wade* v. *Mississippi Cooperative Extension Service* (N.D. Miss. 1974) 378 F.Supp. 1251 (vacated on other grounds, *Wade* v. *Mississippi Cooperative Extension Serv.*, 5th Cir. 1976) 528 F.2d. 508, award reinstated on remand, *Wade* v. *Mississippi Co-Op. Extension Service* (N.D. Miss. 1976) 424 F.Supp. 1242, the losing party challenged the plaintiffs' entitlement to fees on the theory that the Justice Department, as plaintiff-intervener, had done the bulk of the work in the litigation. The court awarded fees to plaintiffs after finding that "counsel for the private plaintiffs, instead of playing a passive role, actively participated throughout in the prosecution of the case, assumed a great measure of responsibility for presenting evidence and independently prepared and submitted various legal memoranda of value to the court." (378 F.Supp. at p. 1254.)

---

[8] Persons whose actions constitute "unfair competition" (including, inter alia, unfair, deceptive, untrue, or misleading advertising) (Bus. & Prof. Code, § 17200) are "liable for a *civil penalty* not to exceed [$2,500] for each violation [to] be assessed and recovered in a *civil* action . . ." (Bus. & Prof. Code, § 17206, subd. (a), italics added).

[9] Neither party to this appeal has submitted authority holding that an individual who wishes to pursue an action to benefit the public, grounded on Business and Professions Code section 17200 et seq. (or any similar statute), can only obtain section 1021.5 fees if she has first solicited the public entity having appropriate statutory authority to sue on behalf of the public to remedy the same perceived public injury. Section 1021.5 and its legislative history (see fn. 12, *post*) do not suggest such a precedent condition to entitlement to such fees.

[10] The courts of this state frequently look to federal cases as persuasive authority in interpreting section 1021.5. (See *Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 352, fn. 5 [188 Cal.Rptr. 873, 657 P.2d 365].)

Further, in *Donnell* v. *United States* (D.C. Cir. 1982) 682 F.2d 240 [220 App.D.C. 405, 68 A.L.R.Fed. 185], plaintiffs who had intervened in an action filed earlier by the government were not barred from an award of fees. The *Donnell* court reasoned, "Where Congress has charged a governmental entity to enforce a statutory provision, and the entity successfully does so, an intervenor should be awarded attorneys' fees only if it contributed substantially to the success of the litigation. This inquiry primarily entails determining whether the governmental litigant adequately represented the [intervenor's] interests by diligently defending the suit. It also entails considering both whether the [intervenor] proposed different theories and arguments for the court's consideration and whether the work it performed was of important value to the court." (Pp. 248-249.)

At least one California court has suggested that a similar rule would be appropriate when interpreting section 1021.5. In *Crawford* v. *Board of Education* (1988) 200 Cal.App.3d 1397 [246 Cal.Rptr. 806], the appellate court affirmed a trial court's denial of attorney fees under section 1021.5 to four groups of interveners who participated in desegregation litigation. However, in doing so, the court stated that an award of fees would be possible to "parties who, at some point during the course of public interest litigation, intervene and contribute in a significant way to the vindication of an important constitutional or statutory right." (*Id.* at p. 1407.)

The case at bench is in that relatively rare minority of cases where relief and concomitant private attorney general fees are sought to be recovered from a private defendant also sued by a public entity.

A private party acting as plaintiff in such cases is not, ipso facto, eligible for attorney fees under section 1021.5 in every case in which that party colitigates with a governmental entity on behalf of the public or a large class of persons, whether by way of intervention or, as here, by consolidation of separately filed cases.

In the circumstances of this case, an attorney fee award is dependent upon an ultimate finding of the trial court that the colitigating private party rendered necessary and significant services of value to the public or to a large class of persons benefited by the result of the litigation.

■ Important factors the trial court should address in determining if the services of the private party were necessary, so as to support that ultimate finding, are these: (1) Did the private party advance significant factual or legal theories adopted by the court, thereby providing a material non de minimis contribution to its judgment, which were nonduplicative of

those advanced by the governmental entity? (2) Did the private party produce substantial evidence significantly contributing to the court's judgment which was not produced by the governmental entity, and which was neither duplicative of nor merely cumulative to the evidence produced by the governmental entity?[11]

In short, the necessity element is not to be determined simply by the form of such private services. A private litigant's theories or arguments, while literally different from those advanced by the governmental entity, may or may not lack significance in contributing to the result obtained. Similarly, a private litigant's efforts may result in injunctive or other relief, as here, against a defendant not named in the public entity suit; that result alone will not automatically satisfy the necessity element of section 1021.5. Judgment against that additional defendant may or may not result in a benefit of significance to the public over that obtained by the judgment secured by the public entity, a factor committed to the trial court's sound exercise of its discretion in determining the necessity of a private fee award.

Nothing in the statute, or in the cases discussing it, suggests the Legislature intended it to be utilized by private parties plaintiff as a means of obtaining fees from adverse private defendants solely because the former beats the district attorney to the courthouse in filing their respective lawsuits for substantially the same civil relief afforded by the Business and Professions Code.

Conversely, section 1021.5 does not proscribe payment of attorney fees to private plaintiffs who successfully initiate and try a private lawsuit for the public benefit *solely* because the People have initiated a similar action which is consolidated for trial with that brought by such plaintiff.[12]

The trial court, in considering fee awards to private litigants on the facts and record applicable to each particular case, must carefully walk the line between unreasonably transmuting section 1021.5 into an unwarranted cornucopia of attorney fees for those who intervene in, or initiate litigation against, private parties under the guise of benefiting the public interest while actually performing duplicative, unnecessary, and valueless services, and providing appropriate compensation under that statute in cases where the

[11] In answering this question, the court is not bound to reach an affirmative conclusion simply because a witness or evidence available to the public entity was examined or introduced by counsel for the private party.

[12] Section 1021.5 was urged on the Senate Judiciary Committee as, inter alia, providing fees in "public interest litigation" for private attorneys in "a miniscule percentage of the cases that now are in the courts or are likely to be in the courts." (Hearings on Sen. Bill No. 664 before the Sen. Com. on the Judiciary (Sept. 22, 23, 1975) p. 47 et seq.)

colitigating private party does render necessary, significant services of value and benefit to the public.

■ We further stress that, in determining the necessity of the legal services of a private party in such cases, the trial court is not bound to find them to be such solely because they are so explicitly or implicitly character- ized (as they apparently were here) by the colitigating public entity or its attorneys, or solely because the attorney for the public entity elects in consolidated cases (as he apparently did in some instances here) to cooper- ate with the attorney for the private party in the alternative presentation of witnesses and evidence. The court's discretion to determine the necessity, significance, and value of private counsel's services in such cases may nei- ther be surrendered to nor dictated by such characterizations or tactical decisions of the lawyers representing either the public entity or the private party plaintiff. The trial court has the obligation to guard against payment of section 1021.5 attorney fees to private parties who bring actions, ostensi- bly for the benefit of the public against private parties defendant, which are merely opportunistic or collusive and undertaken simply to generate such attorney fees.

Appellants here proposed some theories and arguments different from those presented by the People's suit, obtained some injunctive relief in their action different from that sought by the People, and obtained injunctive relief against certain parties who were not named in the People's suit. ■ While we are unable to determine from the record furnished us whether appellants thereby rendered necessary services of value to the pub- lic as required by section 1021.5, appellants' request for fees could not be denied merely because they did not contact the district attorney before they filed their complaint, or because the People subsequently filed a similar suit. The trial court erred in so ruling.

Respondents dispute this conclusion and claim the mere possibility of public enforcement is sufficient to render an action unnecessary within the meaning of section 1021.5. This is clearly not correct for the reasons we have discussed. The case upon which respondents primarily rely to support this argument, *Schwartz* v. *City of Rosemead* (1984) 155 Cal.App.3d 547 [202 Cal.Rptr. 400], is inapposite because of the requirements of the Cali- fornia Environmental Quality Act (CEQA).

In *Schwartz*, the defendant city wanted to build a cogeneration plant on property situated next to the plaintiff's residence, and had concluded an environmental assessment was not required under CEQA. The plaintiff disagreed and obtained a writ of mandate ordering the city to conduct the

assessment. He then filed for an award of fees under section 1021.5. The trial court denied the request for fees, and the appellate court affirmed, holding the plaintiff had failed to demonstrate that the necessity and financial burden of private enforcement were such to render an award under section 1021.5 appropriate. In discussing the necessity issue, the *Schwartz* court noted that, *by statute,* the plaintiff was required to serve a copy of his complaint on the Attorney General within 10 days of the date of its filing. Plaintiff's failure to do so was fatal to the fee request, the court held, because the Attorney General was thereby denied the statutory right to notice and the concomitant triggering of the right to exercise his discretion to intervene in the suit. (155 Cal.App.3d at pp. 560-561.)

Here, unlike *Schwartz*, notification of the Attorney General was not statutorily required.[13]

■ An award of attorney fees under section 1021.5 lies within the trial court's discretion and will not be reversed on appeal absent a showing of abuse. (*Baggett* v. *Gates, supra,* 32 Cal.3d at pp. 142-143.) ■ In applying the appropriate standard of appellate review to the limited record provided, examining the trial court's stated reasons for denying fees, and reviewing the rationale applied below in support of that decision (*Bartling* v. *Glendale Adventist Medical Center, supra,* 184 Cal.App.3d at p. 103; *Bouvia* v. *County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1081-1082 [241 Cal.Rptr. 239]), we conclude the trial court erred by construing the necessity requirement of section 1021.5 too narrowly.

We recognize the rarity of this type of case in which such fees are sought, where both a private party *and* a public entity jointly purport to seek relief conferring a public benefit against a common private defendant. We do not intend hereby to suggest to the lower court on remand how its discretion should be exercised in determining whether to grant or deny the private attorney general fees appellants seek, a decision to be made by the trial court in the first instance. (*Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 559 [183 Cal.Rptr. 73, 645 P.2d 124].)

The trial court, in considering and determining the issue of the necessity of private counsel's services in such cases, must obviously analyze the

---

[13] Respondents also maintain an award of attorney fees in this case would offend public policy. They claim the judgment upon which the attorney fee request was based violated their right to speak freely on a controversial social issue and, thus, cannot be said to have conferred a benefit upon the general public as required by section 1021.5. This argument is really nothing more than an attempt to collaterally challenge the validity of the judgment which respondents failed to appeal. In any event, we must reject respondents' arguments because the record on appeal is insufficient to evaluate them.

peculiar facts and record of each such case presenting that issue, and the efforts and contributions of private counsel such analysis discloses.

We remand this case to the trial court with instructions to reconsider this issue in accordance with the views expressed herein.

III. DISPOSITION

The order denying appellants' motion for attorney fees is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Appellants and respondents shall bear their own costs.

Smith, J., concurred.

KLINE, P. J.—I concur in the majority opinion because I do not understand it to alter the settled principle that parties to public interest litigation who "contribute in a significant way to the vindication of an important constitutional or statutory right" (*Crawford* v. *Board of Education* (1988) 200 Cal.App.3d 1397, 1407 [246 Cal.Rptr. 806]) are entitled to an award of reasonable attorneys fees under the private attorney general doctrine. (Code of Civ. Proc., § 1021.5)

"[S]ection 1021.5 was intended to be used as a tool against *any* individual or entity, public or private" (*County of Fresno* v. *Lehman, ante,* 340, at p. 349 [280 Cal.Rptr. 310] italics in original). Accordingly, such fees have been awarded against private parties. (See, e.g., *Braude* v. *Automobile Club of Southern Cal.* (1986) 178 Cal.App.3d 994, 1011 [223 Cal.Rptr. 914].) There is no reason in logic or in law why a successful plaintiff otherwise entitled to receive a fee award should be deprived of this benefit simply because it was assisted by a public agency, though such assistance might affect the amount of fees awarded. However, because the amount of fees that should be awarded requires an "intensely factual [and] pragmatic" inquiry (*Crawford* v. *Board of Education, supra,* 200 Cal.App.3d at p. 1407), it is impossible in the abstract to identify or evaluate all the considerations that in a given case may properly bear upon the determination.

Respondents' petition for review by the Supreme Court was denied July 11, 1991.