Filed 2/9/16

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SAN DIEGO MUNICIPAL EMPLOYEES ASSOCIATION, et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF SAN DIEGO, et al., <br><br> Defendants and Respondents. | D066886 <br><br><br> (Super. Ct. No. 37-2010-0091207-CU-WM-CTL ) |

Appeal from an order of the Superior Court of San Diego County, Joseph Zimmerman, Judge.  (Retired judge of the Imperial Sup. Ct., assigned by the Chief Justice pursuant to art. VI, §6 of the Cal. Const.)  Affirmed.

Glaser Weil Fink Howard Avchen & Shapiro and Joel N. Klevens, for Plaintiff and Appellant San Diego City Firefighters, Local 145, IAFF, AFL-CIO.

Smith, Steiner, Vanderpool & Wax and Ann M. Smith, for Plaintiff and Appellant San Diego Municipal Employees Association.

Law Office of Michael A. Conger and Michael A. Conger for Plaintiff and Appellant San Diego Police Officers Association.

Rothner, Segall & Greenstone and Ellen Greenstone, for Plaintiff and Appellant AFSCME, Local 127, AFL-CIO.

Jan I. Goldsmith, City Attorney, and Walter C. Chung, Deputy City Attorney, for Defendants and Respondents.

In this action, the City of San Diego (City) sought to compel the San Diego City Employees Retirement System (SDCERS) to increase City employees' contributions to their retirement fund to share in covering an $800 million investment loss suffered by the fund. Four public employee labor unions (Unions)[1] ultimately intervened in the action on the employees' behalf, asserting the same or similar arguments as SDCERS to rebut the City's claims. After the case settled, the Unions moved to recover $1,785,147 in attorney fees under Code of Civil Procedure section 1021.5.[2] (All further statutory references are to the Code of Civil Procedure.) The court denied the motion, finding the Unions were not entitled to fees as their involvement in the lawsuit was unnecessary to the result that was achieved.

The Unions challenge the court's ruling, contending (1) they are entitled to recover their fees even if their attorneys' services were unnecessary to the result; and (2) the court abused its discretion in concluding those services were not necessary. We reject these contentions and affirm the court's order.

---

[1]    The four Unions were: Municipal Employees' Association (MEA); American Federation of State, County, and Municipal Employees; San Diego City Firefighters Local 145; and the San Diego Police Officers Association.

[2]    Section 1021.5 sets forth California's private attorney general doctrine, as an exception to the general rule that each party to litigation must bear its own attorney fees. (*Indio Police Command Unit Assn. v. City of Indio* (2015) 230 Cal.App.4th 521, 544.) It authorizes an award of attorney fees to a successful party in an action that has "resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery . . ." (§ 1021.5.)

FACTUAL AND PROCEDURAL BACKGROUND

SDCERS is a public employee retirement agency established under the City's charter (Charter), article IX, §§ 141 et. seq.; its board manages and administers the City's retirement system. (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1063.) The board's responsibilities include "ensuring that benefits are adequately funded through the sound investment of City- and employee-provided contributions," and ensuring "fully funded retirement benefits are available and delivered to those [employees] it deems eligible." (*Id.* at p. 1092)

Three sources fund the SDCERS retirement system: employee contributions, City contributions, and investment income from retirement system assets. In 2009, the system suffered an actuarial investment loss of more than $800 million. Consistent with its past practice, SDCERS allocated this shortfall solely to the City, not to the employees. In April 2010, the City requested that SDCERS apportion one-half of the losses to its employees under Charter section 143, which provides that contributions of the City and employees to the retirement fund are to be "substantially equal." SDCERS rejected the City's request and adopted a rule that specifically assigned all financial losses to the City.

The City responded by filing a petition for writ of mandate to compel SDCERS to equalize employee contributions to match those of the City. In August 2010, SDCERS demurred to the petition on various grounds, including that City employees or their union representatives were necessary parties to the case and that the City's failure to join them warranted dismissal of the writ. The trial court overruled SDCERS's demurrer, concluding: "At the pleading stage, it appears to the Court that the employees, if joined, would make the same arguments as being raised by SDCERS and would seek the same

3

objective from this litigation as SDCERS. The Court therefore rejects the argument that City employees are necessary and indispensable parties."[3]

Following the court's decision, the Unions sought to intervene in the action on behalf of more than 7,700 City employees who worked in various job classifications that were subject to longstanding collective bargaining relationships with the City. The Unions reiterated SDCERS's claims that the City had always been responsible for unfunded liabilities arising from investment losses even after the addition of Charter section 143 and therefore the employees' vested contractual pension rights required the City to bear the system's unfunded actuarial accrued liability. They also argued that intervention was necessary to protect the employees' fundamental interests. The court allowed the Unions to intervene, finding their members "ha[d] a direct and immediate interest in the litigation; [and] the intervention [would] not enlarge the issues in the case. . . ."[4]

In October 2012 the City moved for judgment on the pleadings on the ground that Charter section 143 required SDCERS to allocate the unfunded liability equally to the employees and the City. Both the SDCERS and the Unions submitted briefs in opposition. In December 2012 the court denied the City's motion.

---

[3] The court relied on *City of San Diego v. San Diego City Employees' Retirement System* (2010) 186 Cal.App.4th 69, 83-84, in which this court held city employees were not necessary or indispensable parties in the City's challenge to SDCERS's funding practices involving pension service credits. (*Id.* at pp. 78-82.)

[4] In February 2011 the trial court granted SDCERS's motion to change venue and ordered the case transferred to Los Angeles. On the City's challenge to the change of venue decision, this court granted relief and ordered assignment of a judge from a neutral county to preside over the matter in San Diego County.

The next month, the City moved for summary judgment on similar grounds. After SDCERS and the Unions filed separate oppositions, each of which contained extensive factual submissions and legal argument, the City withdrew its motion, stating it wanted to focus all of its resources on the impending trial.

The parties thereafter reached a settlement, pursuant to which the City agreed not to require the employees to share in past unfunded accrued actuarial liabilities (UAAL), but reserving the prospective right to claim that employees should contribute to shortfalls caused by "all experience gains or losses." The parties agreed that if the City sought future extra employee contributions, it would first meet and confer with the Unions under the Meyers-Milias-Brown Act. (Gov. Code, §§3500 et seq.) The agreement also recited that the City and the Unions had agreed to a five year freeze on so-called pensionable pay, which would result in substantial reductions to the City's future annual contributions to the pension plan[5]

_____

[5] Both sides claimed victory. The Unions pointed out that the City surrendered its claim which could have required the employees to make up a $400 million deficit and required compliance with the Meyers-Milias-Brown Act before changing the pertinent ordinance to increase employee contributions for future unfunded accrued actuarial liability.

The City claimed that the Unions were not the prevailing party because left unresolved was the issue of whether employees could be forced to increase future UAAL contributions to the retirement fund to make up for fund investment losses. The City also contended that the Unions did not achieve their goal of obtaining final judicial approval of their interpretation of Charter section 143 regarding City and employee UAAL contributions. It also pointed out that during the pendency of the action, the employees agreed to freeze pensionable pay for five years, thus substantially reducing the City's contribution to the retirement fund. Further the City noted that the Unions agreed that it was entitled to reduce its contributions to the retirement fund based on stock market gains.

In December 2013 the City filed a motion for good faith settlement determination.[6] In February 2014 the court granted the motion, and entered judgment on the settlement.

After the court entered judgment based on the settlement, the Unions filed a collective motion to recover their attorney fees of $1,785,147 under section 1021.5. The City opposed the motion on numerous grounds, including that the Unions were not successful parties, the Union members' personal financial stake in the litigation precluded recovery and the Unions' separate participation in the litigation with SDCERS was not necessary to facilitate the outcome of the case. On the latter point, the City presented evidence that it had already paid SDCERS more than $4,000,000 in attorney fees.

After extensive argument and supplemental briefing, the court denied the Unions' attorney fee motion. Although the court found that the Unions were successful parties, the settlement conferred a significant benefit on a large class of persons, and the Unions' financial stake was outweighed by the litigation's financial burden, it denied the motion, stating: "[The Unions] contend they provided a material contribution[,] which was non-duplicative and beyond the services rendered by SDCERS. However, the court is not persuaded [that the Unions'] involvement was necessary to the final outcome or that enforcement of this action was necessary. As such, [the Unions] have not met their burden on this element." The Unions appeal the resulting order.

_____

[6]     We note that this motion for good faith settlement determination is not authorized by section 877.6, which bars future lawsuits for equitable contribution or indemnity against a settling joint tortfeasor or co-obligor. Where, as here, there is no named joint tortfeasor or co-obligor who would be bound by the court's good faith determination, section 877.6 is inapplicable. (See *Hartford Accident & Indemnity Co. v. Superior Court* (1995) 37 Cal.App.4th 1174, 1178-1179 [recognizing that where an action involves only one tortfeasor or obligor, § 877.6 "do not come into play"].)

6

The Unions contend the court erred in concluding they were not entitled to section 1021.5 attorney fees because they did not show their attorneys' services were necessary to the outcome of the case. Specifically, they aver that they were not required to establish necessity, and alternatively that they adequately established this element. For the reasons explained below, we reject these arguments. Based on this conclusion, we do not reach the issue whether the court's findings on the other elements were correct.[7]

## I. *Necessity was a Required Element in this Case*

To obtain section 1021.5 attorney fees, a private party must establish that the necessity and financial burden of its private enforcement efforts were of such a nature "as to make the award appropriate." (§ 1021.5, subd. (b); see *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 85 (*Stewart*).) This prong of section 1021.5 focuses on "whether there is a need for a private attorney general for enforcement purposes." (*Stewart*, *supra*, at p. 85.) Where there is no governmental agency available to challenge an official action, the necessity of private enforcement is "obvious" and "readily met." (*Ibid.*)

However, when, as here, a private party has litigated a case on the same side as a non-volunteer public entity, significant questions arise as to whether its private participation was needed given the public entity's parallel advocacy. Under such

---

[7] We accept, without deciding, the Unions have a financial stake in the outcome of the case. We note, however, that the Unions are generally recognized to have the same financial stake as their members because their "very existence depends upon the economic vitality of [their] members and any benefit or burden derived by [the Unions] from this lawsuit ultimately redounds to the membership…." (*California Licensed Foresters Assn. v. State Bd. of Forestry* (1994) 30 Cal.App.4th 562, 570.)

circumstances, the private party requesting attorney fees must make a significant showing that its participation was material to the result, *i.e*., that it proffered significant factual and legal theories, and produced substantial, material evidence, that were not merely duplicative of or cumulative to what was advanced by the governmental agency. (*Committee to Defend Reproductive Rights v. A Free Pregnancy Center* (1991) 229 Cal.App.3d 633, 642 (*Committee to Defend Reproductive Rights*).)[8]

In asserting they were not required to establish necessity to obtain section 1021.5 attorney fees, the Unions rely exclusively on the decision in *State Water*, *supra*, 161 Cal.App.4th 304, which they maintain stands for the proposition that a private party is not required to make a "necessity" showing when the private party colitigates a case with a public entity "*unless the public entity functioned like an attorney general*." (Italics added.)

In *State Water*, certain private environmental groups and several public local water agencies, each acting voluntarily in the public interest, sought mandamus relief against the State Water Resources Control Board (a state agency that was represented by the Attorney General) to require implementation of a water flow plan designed to protect salmon. (*State Water*, *supra*, 161 Cal.App.4th at pp. 309-310.) Upon prevailing, two of the local water agencies obtained attorney fees under section 1021.5 and the private

---

[8]     This stands in contrast with the situation where the colitigants are all private parties. (*Stewart*, *supra*, 126 Cal.App.4th at p.86.) "If two private parties prosecute important public interest litigation together and obtain the same success, neither party's services can be deemed unnecessary simply because the other party would have succeeded without them." (*State Water Resources Bd. Cases* (2008) 161 Cal.App.4th 304, 315 (*State Water*).) Although the relative contributions of "multiple private attorneys general" cannot be a basis for denying *entitlement* to attorney fees under section 1021.5, a court may consider these contributions in determining the *amount* of the award. (*Stewart*, *supra*, at p. 88.)

environmental groups also sought to recover their fees. (*State Water*, *supra*, at p. 311.) The trial court declined to award the private environmental groups attorney fees because they had not shown that the same result would not have been obtained based solely on the local water agencies' efforts. (*Id.* at p. 311.)

The appellate court reversed, concluding that section 1021.5's "necessity" requirement did not apply because, on the facts involved, the local public agencies served functionally as private attorneys general. (*State Water*, *supra*, 161 Cal.App.4th at p. 317,) Recognizing that "the purpose of section 1021.5 is to encourage parties—whether public or private—who do not necessarily have adequate financial resources to do so[,] to pursue important public interest litigation . . ." (*State Water*, *supra*, at p. 316), the court concluded that legislative amendments to the statute allowing one public agency to recover attorney fees under section 1021.5 from another public agency were intended to apply in favor of public entities that pursued public interest litigation against other public entities *where there was no public attorney general available to act in the case*. (*State Water*, *supra*, at pp. 314, 316.)

Given these policies, *State Water* held that when a public entity's participation in a lawsuit reflects its required public function, " 'there is no utility in inducing a private attorney general to duplicate the function' . . . and the efforts of the colitigating private party should be evaluated under the rule in *Committee to Defend Reproductive Rights*, looking to see whether the private party rendered services that were necessary and significant to the success that was achieved. If, on the other hand, there is no public attorney general available to act, then the "bounty" that section 1021.5 provides must be available to any party, public or private, who takes on the responsibility of pursuing

9

important public interest litigation beyond its own interests." (*State Water*, *supra*, 163 Cal.App.4th at p. 317.)

Applying these principles to the facts before it, the *State Water* court held that because the Attorney General was representing the State Water Resources Control Board, there was no public attorney general available to pursue the litigation to protect the public's interests regarding the implementation of the regional water use plan and thus it fell to the volunteer parties—the local water agencies and the private environmental groups—to do so. (*State Water*, *supra*, 163 Cal.App.4th at p. 317.) The *State Water* court emphasized that the local water agencies were not required to litigate the important public issues at stake, and instead they—like the private environmental agencies—had essentially acted as volunteers in pursuing the litigation and thus were properly rewarded for their efforts under section 1021.5, even though they were public entities.

The Unions contend the facts of this case are indistinguishable from *State Water* and therefore they were not required to establish necessity of private enforcement to show entitlement to section 1021.5 attorney fees. We disagree. Unlike the public water agencies in *State Water*, SDCERS was the public agency whose job and function it was to ensure the soundness of the city retirement system and thus it was not acting as a volunteer in responding to this litigation brought by the City. (*Lexin v. Superior Court*, *supra*, 47 Cal.4th at p. 1063.) Because SDCERS was carrying out its required public function, the Unions must show their intervention was material to the ultimate result to recover public interest attorney fees. (*Committee to Defend Reproductive Rights*, *supra*, 229 Cal.App.3d at pp. 642-644 [recognizing that absent a necessity requirement, section 1021.5 could be unreasonably transmuted "into an unwarranted cornucopia of attorney

10

fees for those who intervene in, or initiate litigation . . . while actually performing duplicative, unnecessary, and valueless services"].)[9]

## II. Court Did Not Abuse Discretion in Determining Unions' Services Were Not Necessary

The Unions alternatively argue that even if necessity is a required element of their attorney fee claim, the court erred in concluding that their work in this case was not necessary to the outcome achieved.

Whether a plaintiff established entitlement to a section 1021.5 award of attorney fees is a question best decided by the trial court. (*Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 170.) "The 'experienced trial judge is the best judge of the value of professional services ordered in his court, and while his judgment is of course subject to review, it will not be disturbed [on appeal] unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion. (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) Great deference should be given to the trial court because of its superior understanding of the litigation. (*Taylor v. Nabors Drilling*, *USA*, *LP* (2014) 222 Cal.App.4th 1228, 1249.)

Where, as here, private parties have voluntarily joined in cases that government entities are required to prosecute or defend, the trial court must exercise its discretion to determine "the necessity, significance, and value of private counsel's services" and is not

---

[9]     We likewise reject the Unions' additional argument that the City's allegations that the SDCERS's role is not to advocate on the employees' behalf estop the City from challenging their entitlement to section 1021.5. In this regard, the Unions have not shown either that the City (a) is now taking a position that is inconsistent with the allegations or (b) was successful in its previous assertion of these allegations, as necessary to trigger the application of judicial estoppel principles. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183-184.)

bound by the characterizations or tactical decisions of private counsel. (*Committee to Defend Reproductive Rights*, *supra*, 229 Cal.App.3d at p. 644.) In exercising this discretion, the court must consider whether the private party (1) raised significant factual or legal theories that were not advanced by the governmental entity and (2) produced substantial and nonduplicative evidence that significantly contributed to the court's judgment. (*Id*. at pp. 642-643.) In this case the court was highly familiar with the litigation and therefore was in the best position to determine whether the Unions' work was necessary to the outcome of the case. The trial judge presided over this case for over two and one-half years, during which time he decided a variety of motions, including a motion to compel, a motion for judgment on the pleadings, a motion to tax costs, a good faith settlement motion and the motion for attorney fees. The extensive briefing, supplemental briefing, and supporting documentation for the attorney fees motion encompassed approximately 700 pages of clerk's transcript and included lengthy oral argument. The trial judge had ample opportunity to observe the performance of the Unions' counsel as well as SDCERS's counsel throughout the litigation[10] and to determine whether the Unions' counsel's work was necessary to the outcome of the case.

In moving for section 1021.5 attorney fees, the Unions presented minimal evidence of necessity. Although Union counsel Ann M. Smith described her specific efforts in the case, including filing a change of venue motion that the court never ruled on and a discovery motion challenging the City's authentication of its discovery responses,

---

[10] An impromptu statement by the judge—who was from outside San Diego County—indicated that he had spent a great deal of time on the case and was very familiar with counsel. Before ruling on the attorney fees motion, the judge remarked, "I feel like I would know you all on the street by now."

there is no indication that these motions had any significant impact on the litigation or its outcome.

The Unions' primary appellate argument focuses on their counsel's efforts in opposing the City's summary judgment motion, pointing out that they took the lead in deposing key City witnesses during discovery and prepared a separate statement with many undisputed statements of fact covering a broad range of topics in opposition to the City's motion for summary judgment. However, the mere fact that witnesses or evidence available to the public agency were examined or introduced by counsel for a private party does not suffice to establish that their efforts were necessary for purposes of section 1021.5. (*Committee to Defend Reproductive Rights*, *supra*, 229 Cal.App.3d at p. 643, fn. 11.) Further, SDCERS itself submitted points and authorities and a separate statement of disputed material facts in opposition to the City's motion for summary judgment.

More importantly, the summary judgment motion was based on the same legal theory as the City's earlier unsuccessful motion for judgment on the pleadings, *i.e.*, that section 143 of the Charter required SDCERS to equalize the employee retirement fund contributions to the City's contributions, and the City withdrew the summary judgment motion *before the court ruled on it*. Thus, the Unions' submissions in opposition to the City's summary judgment motion do not appear to have been in any way material to, or a necessary component of, the outcome of the action.

Under these circumstances, the court had ample reasonable basis for concluding that the Unions failed to establish that they provided a substantial benefit or contributed to the successful outcome of the case so as to be entitled to recover their attorney fees

13

under section 1021.5.  (*Committee to Defend Reproductive Rights*, *supra*, 229 Cal.App.3d at p. 644.)[11]

## CONCLUSION

The court correctly concluded that the Unions were required to show that their efforts were necessary to the outcome of the case as a condition of being awarded private attorney general fees.  In addition, given its extensive familiarity with the case, the paucity of evidence to establish the necessity and significance of those efforts and the broad discretion afforded it in ruling on the attorney fees motion, we cannot say the trial court abused its discretion in denying the Unions' request to recover their attorney fees under section 1021.5.

## DISPOSITION

The order is affirmed.  Respondent to recover costs on appeal.

PRAGER, J.[*]

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.

[11]    We deny the City's motion for judicial notice of a status conference statement filed in an unrelated proceeding.  The records sought to be noticed were not presented to the trial court and in any event are not relevant except as to the truth of the matters asserted, which are not properly noticeable.

[*]    Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.